## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| Will Lehman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 23-11585 |
| v. | ) | |
| | ) | |
| United States Department of Labor; and | ) | |
| Acting Secretary of Labor Julie A. Su, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## INTRODUCTION

1.      Will Lehman, a rank-and-file autoworker from Macungie, Pennsylvania and socialist candidate for president of the United Auto Workers ("UAW"), brings this lawsuit against the United States Department of Labor ("DOL") and its Acting Secretary for failing to act on his complaint of systematic voter suppression in the recent 2022 UAW national elections. The government's failure to act on his complaint was an abuse of discretion, arbitrary and capricious, and contrary to law.

2.      In the UAW's first-ever direct elections for national leadership, the entrenched bureaucracy systematically disenfranchised hundreds of thousands of rank-and-file members and retirees by deliberately failing to provide adequate notice that an election was taking place. To this day, many members are unaware that there was an election in which they had the right to vote. Out of 1.1 million eligible voters, only 104,776 cast ballots while roughly 1,000,000 did

1

not. This turnout—9 percent—is the lowest turnout of any national union election in U.S. history.

3.      The UAW bureaucracy was compelled to hold national elections for the first time as a result of a corruption scandal that implicated the entire national leadership. The bureaucracy campaigned against direct elections and had a motive for suppressing the vote. The bureaucracy was afraid that the elections could give rank-and-file workers like Will Lehman an opportunity to contest its previously unchecked control over the union's assets, built up with generations of workers' dues money, as well as to disrupt the bureaucracy's privileges and cozy relations with corporate management.

4.      The bureaucracy treated the election as a private, internal affair. In the first round of voting, it took steps to inform its patronage network of local and national officials that an election was taking place, while simultaneously ensuring the smallest possible turnout among the rank-and-file. This strategy was reflected by the heavy reliance on the Local Union Information System ("LUIS") system to provide notice of the election, which was historically used only for communication between national and local officials. This strategy ensured that second round of voting excluded Lehman, and was limited to a contest between the representatives of two main factions of the bureaucracy itself: the "Administration Caucus" led by Ray Curry and the "Members United" caucus led by Shawn Fain.

5.      The UAW bureaucracy's refusal to take adequate steps to provide notice to eligible voters is underscored by the far more advanced and professional efforts it took to inform members and retirees of their right to vote for the Democratic Party in the November 22 midterm elections, held at the same time as the first round of the union election. As detailed in the

attached materials, these efforts prove that the UAW had the means of providing adequate notice to its members but that it deliberately chose not to use them.

6.      In November 2022, before voting concluded in the first round, Lehman filed a lawsuit asking this Court to require the UAW and court-appointed monitor take steps to ensure broader participation among the rank-and-file. *See Lehman v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, No. 22-12790, 2022 WL 17184564 (E.D. Mich. Nov. 23, 2022). Lehman presented evidence of widespread problems with notice to UAW members in many locals, as well as difficulty obtaining ballots. He submitted reports and sworn affidavits sent by rank-and-file members from locals across the country showing that locals were withholding notice of the election and were not updating their mailing lists. Lehman warned, "If ballots continue to be sent at this rate each day through the November 28 deadline, total turnout will be roughly 104,000—almost 40,000 ballots fewer than last year's referendum."

7.      There is no longer anything speculative about the issues Lehman raised in November. Through a combination of deceit, incompetence and foot-dragging, this election was effectively held behind the backs of masses of rank-and-file members and retirees. Even outgoing UAW president Ray Curry acknowledged on March 16, 2023 that the election was characterized by "rampant disenfranchisement of UAW voters." This is an extraordinary admission by the head of the bureaucracy itself that vindicates the numerous objections that Will Lehman made throughout the election.

8.      The Court dismissed Lehman's lawsuit, requiring him to wait until after the election to bring his claims, but in a hearing on November 22, 2022 acknowledged that the LUIS system "kind of cut out the membership" and described the turnout as "anemic."

9.      Turnout was almost exactly as low as Lehman warned: 104,776 cast ballots out of 1.1 million. As a result of the bureaucracy's deliberate strategy, the union which once claimed to be the nation's most democratic now holds the embarrassing record for the lowest turnout of any national union election in American history. More ballots were returned as undeliverable than were cast. Turnout among tens of thousands of rank-and-file academic workers in California and Washington was abysmal, with some locals reporting less than one percent of members cast ballots. Claims that low turnout was primarily the result of "apathy" are belied by the fact that in locals where the national officers' election coincided with strike authorization or contract ratification votes, turnout in the latter was 10 or 15 times higher than the former, a sign that rank-and-file workers are far from apathetic about the fight for higher wages and better working conditions.

10.     The role of the law firms charged with overseeing the election and protecting the rights of the rank-and-file (the "monitor") was tainted by conflicts of interest. The monitor law firms, Crowell & Moring and Jenner & Block, are longstanding attorneys and lobbyists for the auto corporations. These law firms *currently represent* companies employing tens or hundreds of thousands of rank-and-file UAW members, including at GM, Dana, CAT, Bosch, Bridgestone and others. These law firms' corporate clients had a direct interest in ensuring that the vote of the rank-and-file was suppressed in the elections, so as to ensure the election of a pliable leadership that would continue the UAW bureaucracy's decades-long collaboration with the corporations in suppressing the interests of the rank-and-file and increasing corporate profits.

11.     These conflicts of interest explain the monitor's cynical assertion, in rejecting Lehman's complaint, that "it is not clear turnout was 'low.'" During arguments in Lehman's November lawsuit, the Monitor's attorney likewise stated, "I don't think there's a basis in the

4

record to conclude that it's a matter of concern that the number is unduly low in this context."

Remarkably, rank-and-file workers have paid the lawyers at Jennifer & Block $5.5 million in

workers' dues money for "monitor services," while Crowell & Moring LLP has received $1.3

million, according to the UAW's latest annual report.

12.     Following the final vote count, in which he garnered 4,777 votes, Lehman timely

submitted a protest to the monitor, as contemplated by this Court's decision in his November

lawsuit. Lehman's protest, totaling 122 pages, is a comprehensive record of the efforts by the

UAW bureaucracy to suppress the vote.

13.     Following the denial of his protest by the monitor, Lehman timely complained to

the DOL and demanded that the election be re-run. On June 29, 2023, the very last day for

responding to his complaint, the DOL issued a three-sentence letter stating that Lehman's

complaint was denied, but without addressing any of Lehman's evidence. The letter merely

states, "A statement of reasons setting forth the basis for this decision will be mailed to you at a

future date." As of this date, Lehman has not been told the reasons for the denial of his

complaint.

14.     This election has been characterized by a total disdain for the rights of rank-and-

file workers like Will Lehman on the part of all the institutions who have had a hand in

overseeing it. The most basic right of over one million workers and retirees—the right to vote—

has been treated as totally unimportant. The UAW bureaucracy, in its unsigned March 17, 2023

submission to the monitor, attacked Lehman—a dues paying member—for even mentioning

"past" UAW corruption. The auto industry lawyers who were placed in charge of safeguarding

his rights, told the Court they were not concerned with extremely low turnout. The DOL, after

being given a lengthy extension to conduct its "investigation," refused to even respond to the detailed arguments Lehman laid out in his complaint.

15.     In light of the overwhelming evidence of voter suppression and interference in the election by the UAW presented by Lehman, the DOL's refusal to act on his complaint is arbitrary and capricious, an abuse of discretion, and contrary to law. Until the election is re-run, the current leadership of the UAW will be widely regarded by the rank-and-file as the illegitimate product of an election characterized by massive voter suppression.

## PARTIES

16.     Plaintiff Will Lehman is a 35-year-old Mack Trucks worker in Macungie, Pennsylvania, a dues-paying member of the United Auto Workers ("UAW"), and a rank-and-file socialist candidate for president of the union. His campaign, which won support from almost 5 percent of the ballots cast, called for returning power from the bureaucracy to the rank-and-file workers on the shop floor. His campaign demanded a reversal of decades of concessions. He brings this suit under Title IV of the Labor Management Reporting and Disclosure Act (LMRDA) seeking judicial review of the refusal of the United States Department of Labor (DOL) and Acting Secretary of Labor Julie A. Su to act on his complaint of defects in the election.

17.     The Department of Labor is an executive agency headquartered in Washington D.C., with regional offices in Detroit. Defendant Julie A. Su is the Acting Secretary of Labor.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction of the claims under 28 U.S.C. §1331 and 29 U.S.C. § 481 et seq. The Court also has jurisdiction by virtue of the Consent Decree in decree in *US v.*

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, No. 2:20-cv-13293-DML-RSW (Doc. No. 10) (E.D. Mich January 29, 2021).

19.     Venue is proper in this judicial district because the UAW is headquartered here, because this Court entered the Consent Decree, and because the Department of Labor's Office of Labor-Management Standards ("OLMS") rejected Lehman's complaint through its Detroit-Milwaukee District Office.

## FACTS

20.     On January 21, 2021, the UAW entered into a Consent Decree with the U.S. Department of Justice. In the Consent Decree, the UAW "acknowledge[d] that there have been criminal convictions, allegations, sworn testimony, and judicial findings of past problems with fraud, corruption, and criminal conduct by certain officials within the UAW and certain of its related entities." *Id.*, *108. The consent decree stated: "UAW members [must] be able to democratically participate in their union's affairs as guaranteed by the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401, *et seq.*" *Id.*

21.     A referendum was held in December 2021. In the referendum, turnout was 140,583 out of roughly 1.1 million members, with two thirds of voters supporting direct elections. Notice of the referendum was provided through the union's Local Unions Information System ("LUIS"), which the monitor has acknowledged is "dependent on receiving information about members from each of the Local Unions" and "not all Local Unions routinely uploaded (or even had the technological capacity to routinely upload)" members' information to a centralized database.

Comparison of direct elections held by large US unions

| | UMWA | APWU | BLET | IBT | UAW |
|---|---|---|---|---|---|
| First direct election | 1969 | 1974 | 2010 | 1991 | 2022 |
| Number of contested direct elections | 3 | 17 | 2 | 6 | 1 |
| Average turnout | 54% | 27% | 33% | 22% | 9% |
| Turnout in first direct election | 47% | 33% | 40% | 28% | 9% |
| Number of elections w/ turnout over 50% | 2 | 0 | 0 | 0 | 0 |
| Number of elections w/ turnout between 30 and 50% | 1 | 9 | 1 | 1 | 0 |
| Number of elections w/ turnout between 20 and 30% | 0 | 5 | 1 | 2 | 0 |
| Number of elections with turnout between 10 and 20% | 0 | 3 | 0 | 3 | 0 |
| Number of elections with turnout less than 10% | 0 | 0 | 0 | 0 | 1 |
| Average turnout compared to UAW 2022 | Six times higher | Three times higher | Three times higher | Two-and-a-half times higher | x |

**Exhibit A at 9.**

22.     Following the referendum, this Court approved rules which note the following

"important principle" which "will guide the 2022 Election":

[C]onsistent with American democratic traditions, the right of every qualified member of
the electorate to vote in this 2022 Election by secret ballot will be protected. This
principle mandates the improvement of membership mailing information to ensure the
enfranchisement of as many members as possible; the broad education of members on the
fact of the 2022 Election to facilitate as broadly as possible their participation in it; and
the fair counting of ballots and certainty around the accuracy of the 2022 Election results.
It further requires that to the extent that any participants in the 2022 Election engage in
any anti-democratic efforts or policies, they will be swiftly addressed and eradicated.

8

23.     Nevertheless, the UAW bureaucracy failed to take the minimum steps that would have been necessary to inform the rank-and-file of the election and their right to vote in it.

24.     Turnout in the first round of the election was roughly 9 percent, exactly as Lehman warned in his November 2022 lawsuit seeking to prevent this catastrophe. More ballots were returned as "undelivered" than were cast, and more were marked undelivered than in the referendum. Roughly 36,000 fewer votes were cast than in the referendum. Turnout in some major academic locals on the West Coast was lower than 1 percent. As a result of this first round of voting, Lehman was excluded from a run-off election.

| | Local 4123 (CSU) | Local 5810 (UC) | Local 2865 (UC) | Local 4121 (UW) |
|---|---|---|---|---|
| Total members according to Local | "Over 11,000" | 48,000 (combined with 2865) | 48,000 (combined with 5810) | "Over 6,000" |
| Ballots sent (according to Monitor) | 2,296 | 6,074 | 30,138 | 9,195 |
| Votes cast | 29 | 328 | 921 | 72 |
| Votes cast in 2021 referendum | 58 | 707 | 1,918 | 675 |
| Turnout decline from 2021 referendum | 50% | 54% | 52% | 89% |
| Turnout of total membership | 0.26% | 2.6% (combining both locals) | 2.6% (combining both locals) | 1.2% |
| Turnout of ballots sent | 1.2% | 5.4% | 3.1% | 0.78% |

**Exhibit A at 23**

25.     Lehman filed a formal protest with the monitor on December 19, 2022, which is attached to this Complaint and incorporated by reference in its entirety. *See* **Exhibit "A."** The protest included a survey of over 100 rank-and-file members representing over 20 percent of all locals. The survey demonstrated that the vast majority of locals never reached out to the

membership to update their mailing addresses and failed to take basic steps to notify the

members that an election was taking place.[1]



**Exhibit A at 17: Summary of Survey Responses**

26.     In his December 19, 2022 protest, Lehman also presented evidence that the UAW

took active steps to inform Lehman and many UAW members of the November 2022 national

*midterm* elections. Lehman submitted evidence that the UAW sent him at least six mailers urging

him of the importance of voting for Democratic Party candidates. To provide notice to the

---

[1] Lehman provided the DOL with the names of the survey respondents and encouraged the DOL to contact respondents to verify their membership and verify their survey responses.

membership about these elections, the UAW bureaucracy made use of a sophisticated tool at the its disposal, the AFL-CIO Labor Action Network (AFL-CIO LAN). In other words, the UAW bureaucracy used better and more sophisticated means to inform its members of the national *midterm* elections than it used to inform its *own* membership about the first-ever national leadership election.

27.    Lehman also submitted to the monitor the results of an audit of all UAW local websites and Facebook pages. This audit established that only 7.2 percent of locals advertised the election on their website and only 7.7 percent made any request that members update their addresses to receive a ballot. Only 11.5 percent of locals made any reference to the election on public local Facebook pages, and only 8.1 percent made any reference to updating addresses.[2]

**Based on audit of all local websites and posts from April to November 2022**

| | Total locals reporting votes | # without local websites | # with local websites | # with websites providing no notice of election whatsoever | # with websites linking to regional website with only generic post to solidarity magazine | # of local websites that made at least one post about election | Percentage of total locals in region that made any reference to election on local website beyond solidarity magazine | # of websites referencing address change /request to update email | # of websites referencing deadlines to request ballots/vote | Percentage of total locals in region that made any reference to address change/request to update email |
|---|---|---|---|---|---|---|---|---|---|---|
| Region 1 | 38 | 11 | 27 | 7 | 16 | 4 | 10% | 0 | 0 | 0% |
| Region 1A | 20 | 3 | 17 | 9 | 6 | 2 | 10% | 2 | 0 | 10% |
| Region 1D | 80 | 58 | 22 | 2 | 17 | 3 | 3.8% | 2 | 0 | 3.8% |
| Region 2B | 114 | 67 | 47 | 5 | 27 | 13 | 11.6% | 10 | 0 | 8.9% |
| Region 4 | 84 | 49 | 35 | 9 | 19 | 6 | 7.3% | 19 | 0 | 23% |
| Region 6 | 19 | 8 | 11 | 4 | 4 | 3 | 15.8% | 3 | 0 | 15.8% |
| Region 8 | 89 | 50 | 39 | 4 | 32 | 2 | 2.2% | 0 | 0 | 0% |
| Region 9 | 44 | 32 | 12 | 2 | 8 | 2 | 4.6% | 3 | 0 | 7.0% |
| Region 9A | 33 | 16 | 17 | 7 | 8 | 2 | 6.1% | 1 | 0 | 3.0% |
| Total | 521 | 293 | 227 | 49 | 137 | 37 | 7.2% | 40 | 0 | 7.7% |

---

[2] Neither the monitor nor DOL has ever rebutted this information.

**Based on audit of all local Facebook pages/groups and posts from April to November 2022**

| | Total locals reporting votes | # without local Facebook pages | # with local Facebook pages | # with Facebook pages providing no notice of election whatsoever | # of private FB pages | # of local public Facebook pages that made at least one post about election | Percentage of total locals in region that made any reference to election on public local Facebook page | # of public Facebook pages referencing address change /request to update email | Percentage of total locals in region that made any reference to address change/request to update email on public FB page |
|---|---|---|---|---|---|---|---|---|---|
| Region 1 | 38 | 14 | 24 | 7 | 9 | 6 | 15.8% | 4 | 10.5% |
| Region 1A | 20 | 3 | 17 | 3 | 7 | 7 | 35.0% | 4 | 20.0% |
| Region 1D | 80 | 38 | 42 | 20 | 12 | 9 | 11.2% | 3 | 3.8% |
| Region 2B | 114 | 74 | 40 | 17 | 11 | 12 | 10.5% | 7 | 6.1% |
| Region 4 | 84 | 51 | 33 | 25 | 0 | 8 | 9.5% | 10 | 11.9% |
| Region 6 | 19 | 9 | 10 | 7 | 0 | 3 | 15.8% | 2 | 10.5% |
| Region 8 | 89 | 57 | 32 | 19 | 10 | 4 | 4.5% | 2 | 2.3% |
| Region 9 | 44 | 32 | 12 | 6 | 1 | 6 | 13.6% | 5 | 11.4 |
| Region 9A | 33 | 13 | 20 | 11 | 4 | 5 | 15.1% | 5 | 15.1% |
| Total | 521 | 291 | 230 | 115 | 54 | 60 | 11.5% | 42 | 8.1% |

**Exhibit A at 20-21**

28.     The monitor denied the protest on March 19, 2023, claiming that "it is not clear turnout was 'low'" and generally dismissing all of Lehman's evidence as "unsubstantiated." As stated above, the monitor's decision was tainted by a conflict of interest. The monitor relied heavily on an unsigned March 17, 2023 document submitted by the UAW defending its conduct of the election.

29.     This document was fatally undermined by the statement Ray Curry made the day before, which acknowledged that the election was characterized by "rampant disenfranchisement of UAW voters." Curry acknowledged that the election violated the "democratic election process" and that large swaths of members and retirees were denied the right to vote. Confirming Lehman's accusations, Curry pointed to systemic problems with the use of the LUIS system to provide notice of the election.[3]

---

[3] Lehman requested a copy of Curry's protest from the monitor, from Curry's campaign, and from the DOL. Each of the three refused to provide Lehman with a copy of Curry's protest. In its seventh Status Report to the Court dated June 16, 2022, the monitor failed to provide any details of the protest.

30.     On March 29, 2023, Lehman filed a complaint with the DOL challenging the

monitor's conflict of interest and challenging its factual and legal determinations as to the

fairness of the election. That complaint is also attached to this Complaint and incorporated by

reference in its entirety. *See* **Exhibit "B."** After obtaining an extension from the UAW (without

consulting Lehman), the DOL denied the complaint on June 29, 2023, the very last day for doing

so, without responding to Lehman's evidence and without providing any factual explanation. See

**Exhibit "C."** The monitor's decision denying Lehman's protest is attached at **Exhibit "D."**

**COUNT ONE: Judicial Review of Department of Labor's Refusal to Act on Rank-and-File
Union Member's Complaint (LMRDA)**

31.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

32.     Section 101 of the LMRDA (the "bill of rights for union members") guarantees

the right of union members to vote in elections, which includes the right to vote on an equal basis

and in a meaningful manner. Section 401 of the LMRDA includes additional democratic

guarantees regarding the conduct of elections.

33.     The 2022 UAW national elections violated, at a minimum, of the following

provisions of the LMRDA:

- §  101(a)(1) (equal rights and privileges);

- §  101(a)(2) (freedom of expression and assembly);

- §  401(a) (manner of election, secret ballot);

- §  401(c) (distribution of campaign literature; prohibition against

  discrimination; inspection of membership list; safeguards to insure fair election);

  §  401(e) (reasonable opportunity to nominate; voting and campaigning

  without interference or reprisal; notice of election; right to vote)

34.     In addition, the UAW membership was not provided a "reasonable opportunity" to vote as defined by 29 C.F.R. § 452.94, which provides: "The statutory protection of the right to vote implies that there must be a reasonable opportunity to vote. Thus, there is an obligation on the labor organization to conduct its periodic election of officers in such a way as to afford all its members a reasonable opportunity to cast ballots."

35.     Lehman was harmed by these violations both as a UAW member and as a candidate in the 2022 UAW national elections. As a result of these violations, his ability to meaningfully participate in the elections as a candidate and campaign for his positions was diminished. In addition, the total number of votes cast for him was substantially less than it would have been in a lawful election.

36.     A federal district court may review the decision of the Department of Labor not to act on a rank-and-file union member's Title IV complaint.

37.     The Department of Labor's rejection of Lehman's complaint was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

38.     Under this claim, Lehman seeks, without limitation, an order requiring that the Department of Labor and the Acting Secretary reopen consideration of his complaint; that the Department of Labor and the Acting Secretary provide him with a statement of reasons why his complaint was denied; and that the Court order such other relief that the Court may deem appropriate.

Dated: July 3, 2022

By: /s/Eric Lee
Attorney for Will Lehman

Eric Lee (Mich. Bar # P80058)
24225 W 9 Mile Rd Suite #140
Southfield, MI 48033
248-602-0936
elee@diamantelaw.com