UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM LEHMAN,

                Plaintiff,                     Case Number 23-11585

v.                                          Honorable David M. Lawson

U.S. DEPARTMENT OF LABOR and
JULIE A. SU,

                Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS, GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND REMANDING CASE TO THE DEPARTMENT OF LABOR

Following a consent decree entered in the United States government's case against the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), the union membership approved a referendum calling for the direct election of certain union officers, which the Court approved on January 31, 2022. The consent decree also called for the appointment of a Monitor who was charged with several duties. *See United States v. UAW*, Case No. 20-13293 (E.D. Mich.) (ECF No. 10). Among them was monitoring the election of union officers. The election was held, and the results ultimately were certified on June 16, 2023. Plaintiff William Lehman, a union member and unsuccessful candidate for the office of International President, lodged several protests with the Monitor both before and after the election, some formally and others as email messages. Post election, the Monitor observed that 30 of Lehman's 34 protests were untimely, but he addressed and rejected each of them on their merits. Lehman took his grievances to the Department of Labor (DOL), which likewise rejected them. However, the DOL only addressed four of the protests on the merits; it rejected the rest of them on the basis of untimeliness, despite the Monitor's merits determinations. Lehman then filed the

present lawsuit with this Court asking that the DOL's decision be vacated, and the case remanded for a more fulsome review of the protests. The plaintiff filed a motion for judgment on the pleadings, and the DOL moved to dismiss. The Court heard oral argument in open court on December 19, 2023. The government has not demonstrated that the Secretary of Labor's reasoning was sound when it failed to address the merits of the 30 protests and deemed them untimely, and the dismissal of those protests was arbitrary and capricious. The government's motion to dismiss will be denied, the plaintiff's motion for judgment on the pleadings will be granted in part, and the matter will be remanded to the DOL for production of supplemental reasons for its actions.

I.

This is not the first time William Lehman has sought relief from this Court to address perceived Union election faults and shortcomings. In November 2022, while nationwide union elections were underway, he filed a complaint and motion for preliminary injunction where he expressed concern that the Union officials had failed to provide effective notice of the election to its members, that the membership lists and outreach to members were seriously flawed, that as a result the union's members largely were unaware of the election or their right to vote and had no ballot access, and that the turnout was woefully low. *See Lehman v. UAW*, No. 22-12790 (E.D. Mich.). The Court denied the motion for preliminary injunction and dismissed the case, holding that Lehman's lawsuit implicated Title IV of the Labor-Management Reporting and Disclosure Act (LMRDA), and therefore the Court did not have subject matter jurisdiction to adjudicate the claims. Under Title IV, Lehman was required to present his election protests to the Union and then to the Secretary of Labor. *Id.*, 2022 WL 17184564, at *1 (E.D. Mich. Nov. 23, 2022).

In the government's lawsuit against the UAW, the Court had granted the government's motion to appoint Neil M. Barofsky as the Monitor under the consent decree. Among his duties

was to "ensure that the election of the members of the [International Executive Board (IEB)] of the UAW shall follow the requirements of the UAW Constitution, and all applicable state and federal laws, and this decree."  Consent Decree ¶ 45, ECF No. 10, PageID.126.  On May 11, 2022, the Monitor exercised his authority under the consent decree by publishing official Election Rules to govern the then-upcoming 2022 election of international officers for the Union.  Official Rules for the 2022 International Officer Election of the UAW (May 11, 2022), https://perma.cc/9LCN-XNGS.  The Rules set forth separate procedures for handling "pre-election" and "post-election" protests by UAW members concerning the conduct of a union officer election.

Protests "concerning conduct occurring on or before November 28, 2022 ('pre-election protests')," other than protests relating to the nomination of a candidate for international office, "must be filed within ten (10) calendar days of the day when the protestor becomes aware or reasonably should have become aware of the action protested or such protests shall be waived as to internal adjudication (which in the 2022 Election [was] overseen by the Monitor)."  Election Rules § 9-2(b).  The Rules further specify that "[a] protest must be filed in writing and sent by email to the Monitor," and "shall contain a clear and concise statement of the grounds for the protest and the complainant's name, address, phone number, and Local Union affiliation."  Election Rules § 9-2(e).  "Within a reasonable amount of time after receipt of a protest, the Monitor shall either: (1) determine the merits of the protest and, if found meritorious, determine the appropriate remedy; or (2) defer making a determination until after the election and thereby treat the matter as a post-election protest pursuant to Section 9-3 below, as if such protest was filed on election day."  Election Rules § 9-2(f).  "The Monitor will notify the following individuals or entities of the decision in writing: the complainant, the Union officials or members involved, any Candidate adversely affected, and any person or entity who is the subject of the decision or

remedy."  *Ibid.*  "In the Monitor's discretion, the Monitor may excuse a missed deadline and choose to adjudicate a pre-election protest that does not abide by the foregoing filing deadlines." Election Rules § 9-2(i).

"Protests concerning conduct occurring on or after November 29, 2022 ('post-election protests') shall be filed with the Monitor . . . [and] must be filed by the later of: (1) fifteen (15) calendar days of the unofficial announcement of the applicable 2022 Election results; or (2) five (5) business days of the date when the protestor becomes aware or reasonably should have become aware of the action protested."  Election Rules § 9-3(a).  The same as a pre-election protest, any post-election protest "must be filed in writing and sent by email to the Monitor," and "shall contain a clear and concise statement of the grounds for the protest and the complainant's name, address, phone number and Local Union affiliation."  Election Rules § 9-3(c).  "Post-election protests shall be considered and remedied only if the alleged violation may have affected the outcome of the 2022 Election, except that any timely protest alleging improper threats, coercion, intimidation, or acts of violence or retaliation for exercising any right protected by these Rules may be considered and remedied without regard to whether the alleged violation affected the outcome of the 2022 Election."  Election Rules § 9-3(b).  Post-election protests are subjected to the same procedural requirements for decision within a reasonable time and notice of a written decision as noted above for pre-election protests, except for the Monitor's option to defer a ruling until after the election, which obviously would be inapplicable.  *See* Election Rules §§ 9-3(e), (f).

Even before he filed his first lawsuit, Lehman had contacted the Monitor by email at least 18 times between July 12 and November 12, 2022 to complain about election irregularities, including dissemination of election information and ballot access.  Am. Compl. ¶ 41(e), ECF No. 13, PageID.230-32.  The November 9, 2022 email summarized most of Lehman's complaints.  The

Monitor acknowledged Lehman's correspondence and stated that he was formulating a "more comprehensive response."  But the Monitor never responded to the complaint before the election, and no such "comprehensive response" ever was produced until much later, long after the election was concluded.  Because the Monitor did not address any of these complaints before the election was concluded, Lehman file a "formal" protest letter with the Monitor on December 19, 2022, detailing 34 protests.  Am. Compl. Ex. A, ECF No. 13-2.  The Monitor issued a response on March 19, 2023.

The Monitor denied all 34 grievances, which the Monitor enumerated, as stated in Lehman's December 19, 2022 post-election protest filing.  As to timeliness, the Monitor wrote as follows:

> As a threshold matter, the Rules for the 2022 International Officer Election (the "Election Rules") required that protests concerning conduct occurring prior to November 28, 2022, be filed within ten (10) calendar days of the day when the protestor became aware, or reasonably should have become aware, of the action protested. With the exception of the claims numbered 14, 32, and 30 — namely, that Mr. Lehman's personal ballot was "never counted," that the Union's "secret ballot guarantees" were violated, and that his supporters were intimidated at a specific Union rally — Mr. Lehman's post-election Protest is untimely on its face. All the other claims concern conduct alleged to have occurred before November 28, 2022, more than ten days before Mr. Lehman's Protest was filed on December 19. Thus, the portions of Mr. Lehman's Protest that are based on these events are therefore denied as untimely. *Notwithstanding that they are untimely, the Monitor has also addressed their substance, and in each case, the Monitor has also found them to be without merit for the reasons discussed below.*

Monitor's Decision dated Mar. 19, 2023, ECF No. 13-3, PageID.394 (emphasis added).  Despite concluding that most of the claims were untimely, the Monitor proceeded to set forth 20 pages of detailed analysis addressing each stated grievance in turn, concluding that several of the claims were either contradicted by undisputed evidence or contrary to the law, and that Lehman had failed to produce any evidence to substantiate the rest.  *Id.* at PageID.394-416.

On March 29, 2023, Lehman filed a complaint with the Department of Labor seeking review of the Monitor's decision rejecting his election protest. The complaint was denied in a summary ruling in June 2023, and a statement of reasons for the denial eventually was produced on August 8, 2023. The Secretary rejected four of the election grievances on the merits, and those claims are not in dispute here. As to the remaining 30 grievances, the Secretary's reasoning sidestepped entirely the substance of the claims and affirmed on the sole alternative ground that all 30 complaints of "pre-election" misconduct were untimely under the Election Rules, and that Lehman therefore had not exhausted his remedies with the Union before presenting his complaint to the Secretary. The Secretary's reasoning is set forth in full below:

> In his decision, the Monitor addressed 34 of the allegations in your post-election protest and determined that only four of them were timely filed under Section 9-3(a) of the Election Rules insofar as they concerned conduct that occurred on or after November 29, 2022. The Monitor noted that the remaining 30 allegations concerned conduct that occurred before November 28, 2022, and accordingly, were required to be raised as preelection protests under the Election Rules. He concluded that these 30 allegations were untimely under Section 9-3(a) because more than 10 days had elapsed from when you were or reasonably should have been aware of the conduct protested in your December 19, 2022 post-election protest. In support of his determination that you were aware of or reasonably should have been aware of the specific issues that were protested in your December 19 complaint, the Monitor relied upon numerous email communications that you sent to the Monitor throughout the election period as well as allegations that you raised in your November 17, 2022 lawsuit filed in federal district court.

> In your complaint to the Department, you assert that the Monitor erred in finding that 30 of the allegations in your post-election protest were untimely. In your complaint, you do not distinguish between the Election Rules governing "pre-election" and "postelection" protests but assert that communications with the Monitor in which you claim to have "protested all the deficiencies in the election" should have been treated as "protests" by the Monitor. The Election Rules at subsection 9-2, address pre-election protests and provide that "[a] protest must be filed in writing and sent by email to the Monitor. The protest shall contain a clear and concise statement of the grounds for the protest and the complainant's name, address, phone number, and Local Union affiliation. The complainant bears the burden of presenting evidence of the alleged improper conduct." *See* Election Rules, 9-2(e) and 9-3(c). Based on his interpretation of the Election Rules, the Monitor explained that the post-election protest you filed on December 19, 2022, was the only protest that you filed.

A review of your post-election protest discloses that it contains the word "protest" in the subject line and its first sentence makes clear that it is an election protest, as it states, "[w]ith this letter, I am formally protesting the 2022 UAW International Officer Election results in their entirety." In contrast, none of the email communications that you sent the Monitor during the course of the election contained the words "complaint" or "protest," nor do any of these emails refer to Section 9 of the Election Rules, which governed pre-election protests. The Department reviewed these email communications and determined that while they reveal your awareness of specific issues, the content of these emails was clearly distinguishable from your December 19, 2022 post-election protest. As the Monitor explained during the Department's investigation, the Monitor viewed the statements made in your numerous emails throughout the election period as general grievances or attempts to pass along information to the Monitor about the conduct of the election. Further, it is notable that the Monitor did not adjudicate any of the issues raised in your email communications as would be required if such communications were formal pre-election protests. At no point during these communications did you clarify to the Monitor that you were attempting to file formal pre-election protests under the Election Rules.

Statement of Reasons (SOR) dated Aug. 8, 2023, ECF No. 13-6, PageID.662-64.

Lehman filed his complaint in this case on July 3, 2023. In his initial pleading, the plaintiff challenged the Secretary's failure up to that point to produce a statement of reasons for denying his complaint seeking review of the Monitor's rejection of his election protest. The Secretary subsequently produced a statement of reasons, which was incorporated into the plaintiff's amended complaint, filed on September 5, 2023. In his amended complaint, the plaintiff alleged that the Secretary's decision was irrational or arbitrary and capricious in its endorsement of the Monitor's conclusion that 30 out of the 34 grounds stated in his election protest were not timely presented according to the UAW election rules. After the government filed a motion to dismiss, the Court held a status conference during which the parties agreed that a disposition of the entire case on the pleadings would be proper, and the Court advised them that it would consider the government's motion as a motion for judgment on the pleadings. The plaintiff filed his cross-motion for judgment on the pleadings, and the parties agree that no further discovery is needed since the entire administrative record comprising the SOR was attached to the amended complaint.

II.

A pleading challenge via Federal Rule of Civil Procedure 12(c), which usually is filed after the defendant has answered and the pleadings are closed, invokes the same standards that govern motions to dismiss filed under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(c); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). When evaluating a motion under Federal Rule of Civil Procedure 12(b)(6), the Court is called upon to determine if the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When reviewing the motion, the Court "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010).

As an initial matter, the parties agree that there is no dispute over the Secretary's disposition of four grounds for challenge which were found to be timely. In those grounds, Lehman complained that (1) his own vote was not counted, (2) ballot secrecy was compromised, (3) his request to extend the vote tally deadline was denied by the Monitor and the Union, and (4) threats were made to certain volunteers working with Lehman's campaign. The Monitor and the Secretary both concluded that those grievances either were contradicted or unsupported by the available evidence, that Lehman had not shown that any provisions of the LMRDA had been violated by the Union's handling of ballots, and that Lehman's vote was in fact tallied. Lehman does not petition the Court for further review on any of those challenges.

The Secretary's argument on the other challenges emphasizes the narrow scope of review afforded district courts under Title IV of the LMRDA, and she insists that record indisputably shows that Lehman's 30 remaining protests were untimely. She gives no credit to the several pre-election complaints as protests, and she views Lehman's December 19, 2022 protest letter as the only legitimate formal protest under the Election Rules. Because that letter was submitted more than ten days after the election closed on November 28, 2022, she concludes that it was untimely. Her alternative argument references Lehman's several pre-election communications to the Monitor, the last one dated November 11, 2022, and she contends that because there was no formal response by the Monitor, Lehman's complaint to the DOL had to be filed within four months, that is, by March 11, 2023, a date he missed by two weeks.

Lehman counters that his pre-election emails to the Monitor, particularly the November 9, 2022 email, should be regarded as protests because they contained all the elements required by the Election Rules. The Monitor's failure to respond before the election concluded, he says, prompted his December 19, 2022 letter, which he characterizes as a timely post-election complaint in which

he reasserted all of the grounds stated in his pre-election complaints submitted via email, and which also added other claims of election irregularities.  Lehman asserts that when the Monitor finally issued a decision on March 19, 2023 in which he addressed and rejected all of Lehman's grievances — including those covered in Lehman's pre-election email complaints, Lehman timely submitted a complaint for review by the Secretary of Labor on March 29, 2023, which was well within the 30-day window for administrative appeal following the Monitor's decision.  Lehman argues that the Secretary's formalistic application of the Election Rules, by which she refuses to view many of the pre-election communications with the Monitor as protests, is arbitrary and capricious.  He points out that the Monitor never adjudicated any of his pre-election protests before the election transpired, but the Monitor eventually did issue a "more comprehensive response" to all of the grievances presented — both before and after the election — when he issued a decision on Lehman's December 19, 2022 post-election protest and addressed the merits of all of Lehman's grievances.  That is consistent with the Election Rules, which allow the Monitor to defer a ruling on a pre-election protest until after an election has concluded, and then to adjudicate it as a post-election protest deemed to have been filed on election day.

The LMRDA incorporates two distinct remedial avenues for union members to present grievances about the conduct of union elections. First, Title I guarantees union members "equal rights . . . to nominate candidates, [and] to vote in elections or referendums of the labor organizations." 29 U.S.C. § 411(a)(1).  If a union member believes that right to have been violated, he or she "may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."  29 U.S.C. § 412.  Second, Title IV addresses the timing and manner in which local, national and international union elections of officers are to be conducted. 29 U.S.C. § 481 *et seq.*; *see also Am. Fed'n of Musicians v. Wittstein*, 379 U.S. 171, 181 (1964)

("Title IV contains elaborate statutory safeguards for the election of union officers."); *Harrington v. Chao*, 280 F.3d 50, 53 (1st Cir. 2002) ("Title IV of the LMRDA . . . establishes minimum standards for the election of union officers." (citation omitted)).  To enforce rights granted under Title IV, the union member must file a complaint with the Secretary of Labor (after completing certain procedural requirements).  29 U.S.C. § 482(a).  That is the only enforcement route under that title; district court litigation is not an option.  29 U.S.C. § 483 ("The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."); *Local No. 82, Furniture & Piano Moving Drivers v. Crowley*, 467 U.S. 526, 540 (1984) (Title IV "'sets up an exclusive method for protecting Title IV rights,' and Congress 'decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV.'") (quoting *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964)).

The parties agree that Title IV governs Lehman's complaint in this case.

It is well established that federal courts play a limited role when it comes to reviewing the Secretary of Labor's decisions on complaints lodged under Title IV.  *Crowley*, 467 U.S. at 550 n.22.  That is because the Secretary has exclusive authority to challenge and, if successful, to supervise union elections.  *Crowley*, 467 U.S. at 550 n.22 (citing *Dunlop v. Bachowski*, 421 U.S. 560, 568-71 (1975), overruling *Dunlop* in part on other grounds).

In *Dunlop*, the Court observed that its prior decisions "construing the LMRDA identif[ied] the congressional objectives and thus put the scope of permissible judicial review in perspective." The Court determined that when Congress passed the LMRDA, it had "decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest [and] decided not to permit individuals to block or delay union elections by filing federal-court suits." *Dunlop*, 421 U.S. at 568-69 (quoting *Calhoon*, 379 U.S. at 140).  "Congress' concern was

to settle as quickly as practicable the cloud on the incumbents' titles to office, and in deliberately giving exclusive enforcement authority to the Secretary emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 569 (cleaned up). "'Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted.'" *Ibid.* (quoting *Trbovich v. Mine Workers*, 404 U.S. 528, 532 (1972)). "Congress intended to prevent members from pressing claims not thought meritorious by the Secretary, and from litigating in forums or at times different from those chosen by the Secretary[;] [t]he statute gives the individual union members certain rights against their union, and 'the Secretary of Labor in effect becomes the union member's lawyer' for purposes of enforcing those rights.'" *Id.* at 569-70 (quoting *Trbovich*, 404 U.S. at 538-39).

Discussing the reviewing court's role under Title IV, *Dunlop* held that a "reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit," but it also emphasized that to enable the review that is allowed, "the Secretary must provide the court and the complaining witness with copies of a statement of reasons supporting [her] determination." *Dunlop*, 421 U.S. at 571. Explaining, the *Dunlop* Court held that the Secretary's decision must be detailed enough "to enable a reviewing Court to determine with some measure of confidence whether or not the discretion, which still remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious. It is necessary for [her] to delineate and make explicit the basis upon which discretionary action is taken, particularly in a case such as this where the decision taken consists of a failure to act after the finding of union election irregularities." *Ibid.* (cleaned up).

When a court concludes that the Secretary's statement of reasons is adequate, that is, not arbitrary or capricious, the court's job is finished.  But if those reasons do not measure up, the case must be remanded to the Secretary "to supplement [her] statement."  *Id.* at 574.

The Secretary's decision to overlook the Monitor's 20-page reasoned adjudication of Lehman's numerous election grievances and uphold the rejection of his claims solely on the alternative ground that 30 out of 34 of the claims were untimely was irrational and grounded in an arbitrary and capricious construction of the Election Rules that is not supported by their plain text or the prevailing case law.

The government insists that the Court may look no further than the Statement of Reasons itself when evaluating whether the reasons stated are sound.  That is not quite correct.  *Dunlop* held only that consideration of materials beyond the SOR "may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either *that no violations occurred* or *that they did not affect the outcome of the election*."  *Dunlop*, 421 U.S. at 573.  The plaintiff's petition for judicial review in this case does not require the Court to engage in any such mini-inquisition of any finding that no violations occurred or that any such violations did not affect the outcome of the election.  Instead, the interpretive question presented turns solely on whether as a matter of law and an exercise in textual interpretation the Secretary endorsed a reading of the Election Rules that was reasonable and rationally relied on that reading to conclude that the election grievances were untimely.  The government has cited no authority prohibiting the Court from considering the substance of materials that were themselves considered by the Secretary in making the timeliness determination.  Nevertheless, the SOR facially discloses the critical fault in its reasoning, which is inherently illogical and textually unsupported.

First, the Secretary stated that the Monitor's decision concluded that Lehman's December 19, 2022 protest "was the only protest" that he presented.  In fact, the Monitor expressed no such conclusion explicitly anywhere in his decision.  The fact that the Secretary relied on a conclusion that is nowhere found in the Monitor's reasoning is belied by the Secretary's later statement that, "[a]s the Monitor explained during the Department's investigation, the Monitor viewed the statements made in your numerous emails throughout the election period as general grievances or attempts to pass along information to the Monitor about the conduct of the election."  Statement of Reasons, ECF No. 13-6, PageID.664.  The "conclusion" that the Monitor found none of the pre-election protests to be properly regarded as "protests" appears to be based on post-hoc justification of the Monitor's decision not to adjudicate any such protests in a timely manner before the election, since it is undisputed that no substantial response to Lehman's pre-election complaints ever was produced before the election was completed.  At any rate, the Monitor nowhere expressed in his written decision any finding that the December 19, 2022 protest "was the only protest."

Second, the Secretary represents that Lehman's November 2022 emails to the Monitor were reviewed comprehensively during the Secretary's investigation, and that none of those emails qualified as "protests" because none included certain indicia such as use of the term "complaint" or "protest" or citations of the Election Rules.  That reasoning is unsupported by the plain text of the Election Rules, which specify only that "[a] protest must be filed in writing and sent by email to the Monitor," and "shall contain a clear and concise statement of the grounds for the protest and the complainant's name, address, phone number, and Local Union affiliation."  Election Rules § 9-2(e).  The Secretary set forth no grounds for a conclusion that Lehman's pre-election email protests did not satisfy those criteria.  The Secretary attempts to "distinguish" Lehman's November 2022 emails from his December 19, 2022 "formal protest" based on the usage of significant terms

in the phrasing of the later submission.  But that is another example of post-hoc reasoning through which the Secretary merely attempts to engraft into the rules formal requirements that appear nowhere in their text.  Again, such reasoning appears nowhere in the Monitor's decision, which undertook no such formalistic textual analysis.

The cases on point teach that such pedantry in the application of the exhaustion requirement is particularly inappropriate where it concerns election grievances.  "The requirement of [LMRDA] § 402(a) that a union member first seek redress of alleged election violations within the union before enlisting the aid of the Secretary, was [] designed to harmonize the need to eliminate election abuses with a desire to avoid unnecessary governmental intervention." *Hodgson v. Loc. Union 6799, United Steelworkers of Am., AFL-CIO*, 403 U.S. 333, 339 (1971).  "Plainly Congress intended to foster a situation in which the unions themselves could remedy as many election violations as possible without the Government's ever becoming involved." *Ibid.*  However, "any interpretation of the exhaustion requirement must reflect the needs of rank and file union members — those people the requirement is designed ultimately to serve." *Id.* at 340.  The Court was well aware that "union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations." *Id.* at 340.  The Court determined that the Secretary and the unions must make allowances for such imprecision, because "[u]nion democracy is far too important to permit these deficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of § 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question." *Id.* at 340-41.  "For much the same reasons, members should not be held to procedural niceties while seeking redress within their union, and

exhaustion is not required when internal union remedies are unnecessarily complex or otherwise operate to confuse or inhibit union protestors." *Id.* at 341 n.6. The government has not even attempted to articulate any reasonable basis for a conclusion that the Monitor "could not in any way discern" what Lehman was complaining about when he submitted his pre-election complaints about low turnout and the possible misconduct by the Union (and the Monitor) that might account for it. Moreover, the Monitor's thorough discussion and analysis of each one of Lehman's 30 enumerated grievances on the merits belies the implication that such complaints were not presented to the Monitor in a plain and complete fashion. Under the circumstances, the Secretary's reliance on a pedantic construction of formal protest requirements that are stated nowhere in the Election Rules is irrational as a matter of law.

Moreover, the Secretary's statement acknowledged the fact that "the Monitor did not adjudicate any of the issues raised in [Lehman's] email communications as would be required if such communications were formal pre-election protests." Statement of Reasons, ECF No. 13-6, PageID.664. That circular reasoning is nothing more than an apparent attempt to impute the Monitor's failures to the plaintiff — concluding that because the protests were not "adjudicated," they must not have been protests at all. In addition to the inherent contradiction, that conclusion entirely overlooks the provision of the Election Rules that expressly permits the Monitor to defer adjudication of a pre-election protest until after the election is completed. In this instance, the undisputed record clearly indicates that (1) the Monitor never issued a written decision before the election, (2) in the preliminary response to Lehman's November 2022 complaints, the Monitor represented that a "more comprehensive response would be forthcoming," (3) no such "comprehensive response" ever was produced before the election, or soon afterwards, and (4) the Monitor did produce a "more comprehensive response" when, on March 19, 2023, he issued a 20-

page written decision addressing in detail — and on the merits — each of Lehman's grievances concerning the election, including all of the complaints that he raised before the election, and others which he added in the more formalized statement (or restatement) of grievances submitted on December 19, 2022.

The government's argument on timeliness, which is its sole defense, falls apart as soon as the unsupported premises of the Secretary's reasoning are rejected, since (1) there has been no showing made that any of Lehman's pre-election grievances were not submitted within 10 days of when he learned about the factual grounds for them, (2) the Monitor's final decision rejecting all of those grievances was not issued until well after the election, on March 19, 2023, and (3) Lehman's complaint to the Secretary was submitted on March 29, 2023, well within the 30-day window for appealing the decision for further administrative review.

III.

The government has failed to demonstrate that the Secretary's reasoning was sound, and the dismissal of 30 out of 34 of the grievances stated by William Lehman in his March 29, 2023 complaint to the Secretary was arbitrary and capricious.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss, construed as a motion for judgment on the leadings, (ECF No. 16) is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for judgment on the pleadings (ECF No. 22) is **GRANTED IN PART**.

It is further **ORDERED** that the matter is **REMANDED** the case to the Secretary of Labor for further proceedings, which, at a minimum, must consist of the production of a supplemental statement of reasons.

- 17 -

The Court does not retain jurisdiction.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   June 25, 2024